UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALLEY OF CALIFORNIA, INC., <br> Plaintiff, <br> v. <br> MARCUS P. ROGERS, <br> Defendant. | Case No. 16-cv-06720-JCS <br><br> **ORDER GRANTING IN PART MOTION FOR ATTACHMENT** <br> Re: Dkt. No. 15 |

## I. INTRODUCTION

Plaintiff Valley of California, Inc. ("Valley") moves for a writ of attachment of property that belonged to original defendant James Cotter, who is now deceased. Marcus P. Rogers, as administrator of Cotter's estate, (the "Administrator") has been substituted as the defendant in this action and opposes Valley's motion. The Court held a hearing on May 5, 2017. For the reasons discussed below, Valley's motion is GRANTED IN PART.[1]

At the hearing, the Court requested that Valley submit a proposed order instructing the Clerk to issue a writ of attachment. Upon further consideration, the Court will prepare that order, to be filed separately from and immediately following this order.

## II. BACKGROUND

This case is the latest stage of a prolonged flurry of litigation arising from an ill-fated real estate deal. Cotter retained Valley's predecessor Polley, Polley & Madsen[2] in 1996 to represent him in the sale of five parcels of property that he owned in Sebastopol, California. Green Decl.

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[2] For simplicity, this order treats Polley, Polley & Madsen interchangeably with Valley, and refers to both as "Valley." The Administrator does not dispute that Valley is the successor to that entity and stands in its shoes for the purpose of this dispute.

1  (dkt. 20) ¶¶ 3, 5 & Ex. A (Owner Agency Agreement). Cotter agreed to pay a commission equal to six percent of the transaction price upon sale of the property or certain other conditions, including in the event that Cotter breached a sales agreement with a buyer. *Id.* Ex. A § 5. In 1997, Valley procured Schellinger Brothers ("Schellinger") as a buyer for the property, and Cotter and Schellinger entered an agreement to sell the property for $2,775,000. *Id.* ¶¶ 8, 9 & Ex. B (Sale Agreement). While waiting for necessary approvals from the City of Sebastopol, the parties agreed to an addendum in 1999 increasing the purchase price to $2,930,000. *Id.* ¶ 10 & Ex. B.

As of 2007, the City of Sebastopol still had not approved a necessary subdivision map application, the sale had not closed, and the parties became embroiled in litigation. *See id.* ¶ 11. Schellinger sued the city, unsuccessfully seeking a writ of mandate requiring approval of Schellinger's proposed development project. *Schellinger Bros. v. City of Sebastopol* ("*Schellinger I*"), 179 Cal. App. 4th 1245 (2009) (affirming dismissal). Cotter sued Schellinger for breach of contract, seeking declaratory relief excusing him from performance on the basis that Schellinger had taken an unreasonably long time to obtain approval from the city; the state courts declined to hold that Schellinger had breached the contract but set a deadline for Schellinger to obtain final approval. *Cotter v. Schellinger Bros.* ("*Schellinger II*"), No. A135014, 2013 WL 4007533 (Cal. Ct. App. Aug. 5, 2013). Schellinger thereafter sued Cotter, and the state trial and appellate courts held that Cotter materially breached the sales agreement by hiring a contractor to dig an irrigation trench without obtaining necessary permits and approval. *Schellinger Bros. v. Cotter* ("*Schellinger III*"), 2 Cal. App. 5th 984 (2016). The state courts awarded Schellinger damages of $2,855,431.77. *Id.* at 1006. Pending a decision on appeal in *Schellinger III*, Cotter deposited several million dollars with the California Superior Court for Sonoma County. Glaubiger Decl. (dkt. 19) ¶ 9.

Valley filed this action in state court in November of 2016, after the California Court of Appeal had affirmed judgment against Cotter in *Schellinger III*, alleging that Cotter's breach of the sales agreement with Schellinger entitled Valley to its commission on the uncompleted sale. *See* Notice of Removal (dkt. 1) Ex. A (Complaint). Cotter removed to this Court based on diversity jurisdiction. *See* Notice of Removal ¶ 1.

2

United States District Court
Northern District of California

1 After Cotter died in early 2017, *see* Rule 23(f) Report (dkt. 11), Valley filed its present motion on March 22, 2017, along with an ex parte request for a temporary restraining order, seeking to attach the portion of Cotter's deposit with the Superior Court that would be refunded to his estate, as well as other categories of property in California. Mot. (dkts. 15, 16, 17); Ex Parte Application (dkt. 13). At a hearing two days later, the Court denied ex parte relief on the record and set a briefing schedule for the attachment motion. Civil Minute Order (dkt. 24). The Court substituted the Administrator as defendant on April 3, 2017. Order Granting Mot. to Substitute (dkt. 29).

Valley argues that it is entitled to attachment of under California law due to the probable validity of its claim for breach of contract, based in part on the collateral effect of *Schellinger III*, for the commission of $175,800 that it contends it should have received. Mot. at 7−9. Valley also seeks attachment of interest totaling $81,307.50, estimated attorneys' fees of $85,000, and estimated costs of $15,000, for a total attachment of $357,107.50. *Id.* at 9−10. The Administrator opposes attachment, arguing that Valley's motion is an improper attempt to evade the jurisdiction of the probate court in Texas overseeing Cotter's estate, Opp'n (dkt. 31) at 3−5, that this Court lacks jurisdiction to instruct the California Superior Court how to dispose of funds in its possession, *id.* at 5, and that attachment is a "harsh remedy" not warranted here, *id.* at 5−6. The Administrator also contends that Valley has not shown probable validity because the underlying sales contract was unenforceable for violating the Subdivision Map Act, an issue that the Administrator argues is not subject to collateral estoppel, *id.* at 6−12, that offsetting damages against Valley for professional negligence should negate any right to attachment, *id.* at 12−13, and that even if Valley is entitled to some attachment, Valley overstates the appropriate measure of interest, costs, and fees, *id.* at 13−14. Valley disputes those contentions in its reply, and notes that it submitted a claim in the Texas probate proceedings. *See generally* Reply (dkt. 33); Glaubiger Reply Decl. (dkt. 33-1) ¶ 4 & Ex. D.

The Administrator filed a "Notice of Mootness" on April 25, 2017, stating that the California Superior Court for Sonoma County had disbursed to Cotter's estate the last of the funds that it was holding, and arguing that the present motion is therefore moot and should be denied.

3

Notice of Mootness (dkt. 34). In a response to that notice, Valley argues that the motion is not moot because it seeks to attach other categories of property besides the funds that had been deposited with the Superior Court, and also notes that its claim in the Texas probate proceeding was rejected by the Administrator. Response to Notice of Mootness (dkt. 35).

## III. ANALYSIS

### A. Legal Standard

Under Rule 64 of the Federal Rules of Civil Procedure, a party may seek remedies to secure satisfaction of a potential judgment as allowed by the law of the state where the court is situated. Fed. R. Civ. P. 64(a). Attachment is among the remedies authorized by Rule 64. Fed. R. Civ. P. 64(b).

California law allows for attachment "in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars." Cal. Civ. Proc. Code § 483.010(a). Attachment is not allowed "on a claim which is secured by any interest in real property," or on a claim against a natural person unless it "arises out of the conduct by the defendant of a trade, business, or profession." *Id.* § 483.010(b), (c). A court "shall issue a right to attach order . . . if it finds all of the following:"

> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
>
> (4) The amount to be secured by the attachment is greater than zero.

*Id.* § 484.090. "An attachment may be issued . . . whether or not other forms of relief are demanded." *Id.* § 483.010(d).

Of those requirements, the parties' arguments here focus on whether Valley has established the probable validity of its claims, as well as separate issues including the scope of this Court's jurisdiction in light of ongoing Texas probate proceedings. Those issues are discussed below.

4

The Court finds that the evidence submitted with Valley's motion satisfies the first, third, and fourth requirements of section 484.090, which are not meaningfully in dispute.

### B. Mootness

The Administrator filed a notice stating its belief that Valley's motion is moot because the Sonoma County Superior Court had since released to the Estate all remaining funds of Cotter's deposit. *See* Notice of Mootness; Macaulay Decl. (dkt. 34-1) ¶ 6. Valley does not dispute that those funds have been released to the Administrator and are now outside of this Court's jurisdiction to attach, but argues that its initial application encompassed broad categories of property in California beyond the funds held by the Superior Court, and that the application should be granted with respect to that property. *See* Response to Notice of Mootness. The Court agrees that the Administrator has shown mootness only with respect to the funds formerly held by the Superior Court,[3] and not with respect to the motion as a whole.

The Administrator argued for the first time at the hearing that Valley should not be permitted to attach property other than the deposit because California law requires a party seeking attachment to identify the property being attached with a greater degree of specificity than stated in Valley's application when the owner of the property is an individual. Exhibit A to Valley's initial application makes clear that Valley sought to attach fifteen broad categories of property other than the funds deposited with the Superior Court. *See* dkt. 16 Ex. A. The Administrator could have raised objections to the specificity (or lack thereof) of those categories in his opposition brief, giving Valley an opportunity to address the issue in its reply, but did not do so. The Court declines to consider this argument raised for the first time at oral argument.

### C. Jurisdiction in Light of Texas Probate Proceedings

The parties dispute the effect, if any, of probate proceedings in Texas on this Court's jurisdiction. Neither party cites authority directly addressing the application of California's attachment statute to assets of an estate. As a general rule, the "probate exception" to federal

---

[3] Because the deposited funds are no longer at issue, this order does not address arguments specific to those funds, such as the Administrator's argument that this Court lacks jurisdiction to attach funds held by a state court. *See* Opp'n at 5.

jurisdiction "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311−12 (2006). It is not clear, however, that the property at issue is currently in the custody of any probate court.

Valley seeks to attach property owned by Cotter at the time of his death and located in California. *See* Reply at 8.[4] Because probate was opened outside of California, the Administrator must petition a *California* court for ancillary probate administration before exercising authority over that property. *See Hassanati v. Int'l Lease Fin. Corp.*, 51 F. Supp. 3d 887, 898 (C.D. Cal. 2014) ("'"Ancillary administration" may be required . . . when a probate is opened in another jurisdiction, but the out-of-state decedent has left property in California.'" (quoting a California practice guide)). A California appellate court has addressed the foundation and purpose of this doctrine as follows:

> Justice Story of the United States Supreme Court explained the doctrine: "Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it; and does not, *de jure,* extend to other countries [or states]. It cannot confer, as a matter of right, any authority to collect assets of the deceased, in any other state; and whatever operation is allowed to it beyond the original territory of the grant, is a mere matter of comity, which every nation [or state] is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to its own institutions and the interests of its own citizens." ([*Vaughan v. Northup*, 40 U.S. 1, 5 (1841).])
>
> Some states have abandoned the common law rule and permit estate representatives appointed by any sister state to commence litigation in their courts. (E.g., N.Y. Estates, Powers & Trusts Law § 13−3.5 (McKinney 1967).) California is not one of them. California has always followed the common law in holding that "an executor or administrator, as such, has no power which he can employ extraterritorially." (*Lewis v. Adams* (1886) 70 Cal. 403, 411, 11 P. 833, italics omitted.) California gives effect to sister state judicial acts in other matters but expressly provides by statute that "[t]he authority of a guardian, conservator . . . or of a personal representative, does not extend beyond the jurisdiction of the government under which that person was invested with authority, except to the extent expressly authorized by statute." (Code Civ. Proc., § 1913, subd. (b); accord *Estate of Rawitzer* (1917) 175 Cal.

---

[4] Valley does not appear to dispute that this Court lacks authority to attach property located outside of California. *See, e.g.*, *Pac. Decision Scis. Corp. v. Superior Court*, 121 Cal. App. 4th 1100, 1108 (2004) ("But,of course, a California court lacks jurisdiction to command a sheriff, marshal, or constable in Florida or New Jersey to levy a California writ of attachment on a New Jersey company or a Florida bank.").

6

> 585, 586–587, 166 P. 581.)
>
> As a general practice, a foreign representative who wants to sue, collect claims, or **otherwise exercise authority over a decedent's property situated in California** petitions a California court for ancillary probate administration. (Prob. Code, § 12500 et seq.; Ross & Grant, Cal. Practice Guide: Probate, *supra*, ¶ 14:290 et seq.) The California court then appoints a local personal representative (commonly, the same person appointed by the sister state) who is then vested with authority to marshal California assets. (Prob. Code, § 12504, 12513.) The benefit of a local personal representative, from California's perspective, is **protection of the rights of California creditors who might otherwise lose access to California assets were a foreign representative permitted to remove property from California without California court oversight.** It has thus been said that "[o]ne of the dominant purposes of an ancillary administration is the collection and conservation of a decedent's domestic assets for the benefit of local creditors." (*Estate of Glassford* (1952) 114 Cal. App. 2d 181, 189, 249 P.2d 908.) The rule barring foreign representatives from exercising authority outside their state of appointment protects the rights of domestic creditors. (*Canfield v. Scripps* (1936) 15 Cal. App. 2d 642, 647–648, 59 P.2d 1040; Rest. 2d Conf. of Laws (1971) § 354, com. a, p. 414.)

*Smith v. Cimmet*, 199 Cal. App. 4th 1381, 1391–92 (2011) (bold emphasis added) (alterations in original except for citation to *Vaughan*).

Cotter's property in California falls outside of the territorial jurisdiction of the Texas probate court. There is no evidence or other indication that the Administrator has petitioned for ancillary probate administration in California. The Court therefore finds that the property that Valley seeks to attach is not "in the custody of a state probate court" and there is no jurisdictional bar to attachment. *Cf. Marshall*, 547 U.S. at 311−12.

### D. Valley Has Shown Probable Validity of Its Claim

#### 1. Breach of Contract

Valley has submitted evidence showing that it entered an agreement with Cotter entitling Valley to a six percent commission on the sale of Cotter's property, due upon the first of several possible events, including as is relevant here Cotter's breach or repudiation of a sale agreement. Green Decl. ¶¶ 5−6 & Ex. A (Owner Agency Agreement) § 5. The parties engaged in protracted litigation, and in a published opinion issued August 26, 2016, the California Court of Appeal for the First District affirmed a trial court's judgment after a bench trial that Cotter materially breached the sales agreement. *See generally Schellinger III*, 2 Cal. App. 5th 984; Pl.'s Request for

7

Judicial Notice Ex. 2.

Based on a plain reading of section 5 of the parties' contract, Cotter's breach of the sale agreement entitles Valley to its commission and establishes probable validity of its claim. *See* Green Decl. Ex. A (Owner Agency Agreement) § 5. The Administrator's arguments to the contrary are not availing, at least in the context of the present motion.

First, the Administrator contends that the sale agreement was illegal and void because the state trial court interpreted it as allowing the buyer to waive recording of a subdivision map, and contracts that allow such waiver violate the Subdivision Map Act. Opp'n at 10. In *Schellinger III*, the Court of Appeal held that Cotter waived that argument by failing to raise it before the trial court, *and also* that "it does not positively appear that [the trial court] actually ruled . . . on the Subdivision Map issue in the way Cotter believes," because its discussion of the buyer's right to waive a condition may have referred only to waiving a time limit, not waiving the recording requirement itself. 2 Cal. App. 5th at 995−97. Without addressing the latter alternative holding of *Schellinger III*, the Administrator cites other California appellate decisions holding that illegality of a contract cannot be waived and parties cannot be estopped from raising the issue. Opp'n at 11−12 (citing, *e.g.*, *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 511 (1998)). At the very least, there is a split of authority on the issue, because the published opinion of the Court of Appeal in *Schellinger III* held that Cotter could and did waive the argument. This Court need not conclusively decide the estoppel issue at this juncture. For the purpose of the present motion, Valley needs only to show the *probable validity* of a breach by Cotter. This Court holds the state trial and appellate courts' finding of breach, and in particular the Court of Appeal's rejection of the very argument the Administrator raises here, sufficient to establish probable validity. This holding is without prejudice to the administrator disputing the issue—and the estoppel effect of those decisions—at a later stage of this case.

Second, the Administrator argues that he is likely to prevail on "multi-million dollar offset claim" for Valley's professional negligence that would "easily eclipse[] any recover that [Valley] might obtain." Opp'n at 12−13. The Administrator has not presently filed any counterclaim and has not submitted any evidence yet to support an offset defense of negligence. Without prejudice

8

to any claim or argument that the Administrator may assert on the merits, the speculative possibility of an offset is not sufficient at this time to defeat Valley's showing of the probable validity of its claim.

Six percent of the $2,930,000 agreed price stated in the 1999 addendum to the sale agreement is $175,800. *See* Green Decl. Ex. B (Sale Agreement) Addendum One § 2. Valley is entitled to attach assets sufficient to secure that amount based on the probable validity of its breach of contract claim.

### 2. Interest

Valley also seeks attachment based on prejudgment interest that it believes it will prevail in recovering. The parties' contract called for "interest at the rate of 15% per annum or the maximum amount allowed by law, whichever is less." Green Decl. Ex. A (Owner Agency Agreement) § 10.2. Valley contends that it is entitled to interest at a rate of fifteen percent per year from December 2012, the date that the buyer tendered payment to Cotter under the sale agreement, which Cotter rejected. *See* Reply at 3−4. The Administrator disputes both the rate to be applied and the date from which interest should be calculated, arguing that the California Constitution's usury provision limits interest to ten percent per year, and that interest did not begin to accrue until the state court's *Schellinger III* judgment became final on October 26, 2016. Opp'n at 13−14.

With respect to interest rates, the California Constitution provides that interest accrued on "any loan or forbearance" for commercial purposes cannot exceed the higher of ten percent per year or a formula based on the discount rate of the Federal Reserve Bank of San Francisco. Cal. Const. art. XV § 1(2). Neither party argues that the latter formula would exceed ten percent per year in this case. In response to the Administrator's reliance on this provision, Valley asserts vaguely that "not all transactions are subject to usury laws and questionable [sic] as to whether the interest rate in the commission agreement is subject to usury." Reply at 4 (citing *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 801−02 (1994)). Valley may well be correct, but the conclusory assertion that it is "questionable" whether the constitutional limitation applies is not sufficient to meet Valley's burden of showing probable validity. For the purpose of the present motion, and

9

without prejudice to arguments raised on the merits, Valley has shown probable validity of a claim to interest only at a rate of ten percent per year.

With respect to the starting date of accrual, the parties' agreement called for payment "upon the occurrence of . . . [Cotter] breach[ing] or repudiat[ing] any Sale Agreement." Green Decl. Ex. A (Owner Agency Agreement) § 5.1. The Court therefore agrees with Valley that the appropriate date is the date of Cotter's breach, not the date of a final judgment confirming that breach. The breach identified by the state courts was not, however, Cotter's refusal to accept a tender of the purchase price (as Valley now contends, *see* Reply at 4), but rather Cotter hiring a contractor, David Ruffino, to dig an irrigation trench on the property without a permit and without regard to wetlands preservation laws. *See Schellinger III*, 2 Cal. App. 5th at 993−94 (quoting the trial court's decision); *id.* at 997−1006 (affirming that decision and holding that "[w]hat Cotter calls the trench issue—and which obviously refers to the work done by contractor Ruffino in 2012—is dispositive" on the issue of breach). It is not clear from the record when the breach caused by that work on the property was complete. Based on the Court of Appeal's characterization of Ruffino's work occurring "in 2012," however, *see id.* at 999, it is sufficiently clear that the breach occurred by the end of that year at the latest. The Court finds January 1, 2013 to be an appropriate starting date for calculation of interest for the limited purpose of attachment, without prejudice to any arguments or evidence that either party might raise on the merits.

At an annual rate of ten percent, Valley would be entitled to $17,580 per year on its commission of $175,800. As of the hearing date on this motion, three full years plus 124/365 of the present year have elapsed since the beginning of 2013. Valley may therefore attach an additional $58,712 to account for prejudgment interest. Adding that to the commission, Valley's total attachment comes to $234,512.

### 3. Costs and Attorneys' Fees

Neither Valley's motion nor its reply brief includes any explanation of how Valley reached its estimates for costs totaling $15,000 and attorneys' fees totaling $85,000. *See* Mot. at 9 (stating only that "those costs are estimated to be $15,000.00, and attorney fees of $85,000"). Although California law grants the Court discretion to include "an estimated amount for costs and allowable

10

attorney's fees" in a writ of attachment, *see* Cal. Civ. Proc. Code § 482.110(b), based on Valley's failure to provide any justification for the amounts that it requests, the Court declines to do so here.

## IV. CONCLUSION

For the reasons discussed above, Valley's motion for a writ of attachment is GRANTED IN PART, to attach assets as listed in Exhibit A to Valley's motion sufficient to secure an amount $234,512. This Court will issue a separate order instructing the Clerk to issue the writ and setting forth the property to be attached.

**IT IS SO ORDERED.**

Dated: May 5, 2017

JOSEPH C. SPERO
Chief Magistrate Judge